UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| AMAR K., | |
|       Petitioner, | No. 1:26-cv-01731-TLN-CKD |
| | A # 240-370-503 |
|     v. | |
| WARDEN, MESA VERDE DETENTION CENTER, et al., | **ORDER** |
|       Respondents. | |

This matter is before the Court on Petitioner Amar K.'s[1] ("Petitioner") Motion for Temporary Restraining Order ("TRO"). (ECF No. 2.) Respondents filed an opposition. (ECF No. 7.) Petitioner filed a reply. (ECF No. 8.) For the reasons set forth below, Petitioner's Motion for TRO is GRANTED.[2] (ECF No. 2.)

///

---

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits Petitioner's full name, using only his first name and last initial, to protect sensitive personal information. *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2] On March 10, 2026, the Court issued a minute order granting Petitioner's Motion for TRO and ordering his immediate release. (ECF No. 9.) This Order explains the Court's reasoning.

1

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is a noncitizen who entered the United States in 2023 without inspection.[3] (ECF No. 1 at 3; ECF No. 7-1 at 2.)  After initially being placed in expedited removal proceedings, Petitioner was released on his own recognizance pursuant to § 236 of the Immigration and Nationality Act ("INA") on September 21, 2023.  (ECF No. 7-1 at 5, 15–18.)

In the time following his release, Petitioner developed "deep roots" in his community. (ECF No. 1 at 4.)  He worked as a commercial truck driver and provided for his family.  (*Id.*) Petitioner has no criminal history.  (*Id.*)

While the order of events is unclear, on October 3, 2025, Immigration and Customs Enforcement ("ICE") Deportation Officers "were tasked to apprehend [Petitioner]."  (ECF No. 7-2 at 3.)  That same day,[4] Petitioner attended a credible fear interview for his asylum application in San Francisco.  (*Id.* at 11.)  The Asylum Officer found Petitioner was not credible and did not establish a credible fear of persecution or torture.  (*Id.* at 14.)  The Asylum Officer signed their decision at 12:14 p.m.  (*Id.*)  At around 2:30 p.m, ICE Deportation Officers took Petitioner into custody.  (*Id.* at 3.)  The Deportation Officers "advised him that he was under arrest for violating immigration law."  (*Id.*)  Petitioner was placed in handcuffs and transported from the San Francisco Asylum Office to the San Francisco ICE Office.  (*Id.*)  A warrant for Petitioner's arrest pursuant to § 236 of the INA was executed at 7:20 p.m.  (*Id.* at 1.)

On October 10, 2025, an Immigration Judge ("IJ") vacated the Department of Homeland Security's credible fear determination.  (ECF No. 7-3 at 2.)  The IJ found Petitioner had established a significant possibility of eligibility for asylum or withholding of removal under the INA or the Convention Against Torture.  (*Id.* at 1.)  On November 5, 2025, Petitioner was served a Notice to Appear for removal proceedings under § 240 of the INA.  (ECF No. 7-4 at 9.)  Prior to

---

[3]   Petitioner states that he entered the United States in September or October of 2023.  (ECF No. 1 at 3.)  The Government's documents indicate Petitioner entered the United States in August of 2023.  (ECF No. 7-1 at 2.)

[4]   Petitioner states that he attended his credible fear interview and was detained by ICE agents on October 2, 2025.  (ECF No. 1 at 4.)  The Government's documents indicate his interview and arrest occurred on October 3, 2025.  (ECF No. 7-2 at 11.)

2

the Court ordering his immediate release (ECF No. 9), Petitioner was detained for approximately four months at the Mesa Verde Detention Center (ECF No. 2 at 3–4).

On March 3, 2026, Petitioner filed a Petition for Writ of Habeas Corpus challenging his detention as violating the INA and the Due Process Clause of the Fifth Amendment.  (ECF No. 1.)  Petitioner also filed the instant Motion for TRO seeking immediate release.  (ECF No. 2.)

## II.    STANDARD OF LAW

For a TRO to issue, courts consider whether Petitioner has established "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Petitioner must "make a showing on all four prongs" of the *Winter* test.  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).  The Court may weigh Petitioner's showing on each of the *Winter* factors using a sliding-scale approach.  *Id.*  A stronger showing on the balance of hardships may support issuing a preliminary injunction even where there are "serious questions on the merits . . . so long as the [petitioner] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest."  *Id.*  Simply put, if "serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in Petitioner's favor in order to issue a preliminary injunction.  *Id.* at 1134–35.

## III.    ANALYSIS

### A.    Likelihood of Success on the Merits

Petitioner argues he is likely to succeed on his claim that his detention violates the INA. (ECF No. 2 at 5.)  In opposition, Respondents argue that because Petitioner was initially placed in expedited removal proceedings and later received a positive credible fear finding, he is subject to mandatory detention for further consideration of his asylum application under 8 U.S.C. § 1225(b)(1)(B)(ii) ("§ 1225(b)(1)").[5]  (ECF No. 7 at 1–2.)

---

[5]    Respondents do not identify a specific code section mandating Petitioner's detention but quote language from *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018), related to 8 U.S.C. § 1225(b)(1).  (ECF No. 7 at 1–2.)  The Court thus understands Respondents' position to be that Petitioner is subject to § 1225(b)(1).

3

The INA generally provides two administrative processes for the removal of noncitizens deemed inadmissible: expedited removal proceedings and standard removal proceedings.  The expedited removal process is governed by § 1225.[6]  The standard removal process, "section 240 proceedings," is codified at § 1229a.  *Noori v. LaRose*, 807 F. Supp. 3d 1146, 1157 (S.D. Cal. 2025).  For those in standard removal, apprehension and detention during the pendency of those proceedings is governed by § 1226(a) and (c).  *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022).  Under § 1226(a), the Government has broad discretion whether to release or detain the individual.  *Id.*  Section 1226(a) also provides "extensive procedural protections" including several layers of review of the initial custody determination, "an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change."  *Id.* at 1202.  Though not relevant here, § 1226(c) "carves out a statutory category of [noncitizens] who may *not* be released under § 1226(a)" based on criminal history and related considerations.  *Jennings*, 583 U.S. at 289 (emphasis in original).

Petitioner was initially placed in expedited removal proceedings when he entered the United States.  (ECF No. 7-1 at 5.)  But thereafter, starting from when he was released on recognizance, the Government consistently treated Petitioner as subject to standard removal proceedings instead.  Petitioner's Order of Release on Recognizance, dated September 21, 2023, states that he is being released "[i]n accordance with [§] 236 of the [INA]," which is codified at § 1226.  (*Id.* at 15.)  The warrant for Petitioner's arrest, issued after his credible fear interview on October 3, 2025, was also made pursuant to § 236 of the INA.  (ECF No. 7-2 at 1.)  Petitioner's Notice to Appear, dated November 5, 2025, states that he is in removal proceedings under § 240 of the INA, which is codified at § 1229a.  (ECF No. 7-4 at 9.)

The record thus shows that since the time of his release in 2023, Petitioner has been in standard removal proceedings and subject to discretionary detention under § 1226(a) rather than expedited removal proceedings and subject to mandatory detention under § 1225.  These two

---

[6]    Unless otherwise noted, citations to statute refer to sections of Title 8 of the United States Code.

4

statutes cannot be applied simultaneously. *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025).

Respondents' position that Petitioner is detained under § 1225(b)(1) contradicts their own records and appears to be a justification adopted post hoc and raised for the first time in litigation. *See Jimenez v. FCI Berlin, Warden*, 799 F. Supp. 3d 59, 67 (D.N.H. 2025) (similarly finding petitioner subject to § 1226(a) where their order of release on recognizance and warrant were issued pursuant to § 1226(a)); *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 486 (S.D.N.Y. 2025) (declining to credit Respondent's post hoc rationalization for petitioner's detention). Because "Respondents cannot detain Petitioner in connection with expedited removal proceedings that do not exist," Petitioner's detention under § 1225(b)(1) is improper. *Aguilar v. Bondi*, No. 5:25-CV-01453-JKP, 2025 WL 3471417, at *6 n.3 (W.D. Tex. Nov. 26, 2025). The Court thus finds Petitioner has established a likelihood of success on merits of his claim that his detention violates federal law.[7]

> B.      Irreparable Harm

Petitioner has established that he will suffer irreparable harm in the absence of preliminary relief. The Ninth Circuit recognizes "irreparable harms imposed on anyone subject to immigration detention," including "subpar medical and psychiatric care in ICE detention facilities, the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to [family.]" *Hernandez*, 872 F.3d at 995. Such harm is present here. (ECF No. 2 at 5–6.) Petitioner submits that in addition to the harm of losing his liberty, the separation from his family has caused mental anguish. (*Id.* at 6.) Without relief, Petitioner faces the prospect of significant additional time in detention on top of the months he has already spent in detention. (*Id.*) Moreover, as the Court has found, Petitioner's detention does not comport with federal law. Depriving Petitioner of his liberty on a misapplication of § 1226(b)(1) causes irreparable harm. *See Lepe v. Andrews*, 801 F. Supp. 3d 1104, 1119 (E.D. Cal. 2025) ("As other

---

[7]     Petitioner also challenges his detention as violating the Fifth Amendment Due Process Clause. (ECF No. 1 at 5.) As the Court finds Petitioner has established a likelihood of success on the merits of his statutory claim, the Court need not address Petitioner's constitutional claim.

courts that have faced this issue have explained, the violation of petitioner's statutory rights causes 'immediate and irreparable injury.'" (citing *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01874-SSS-BFM (C.D. Cal. July 28, 2025)).  This factor thus weighs in Petitioner's favor.

### C. Balance of Equities and Public Interest

As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the balance of the hardships and the public interest merge." *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)).  The Court finds these factors also favor Petitioner.  Ensuring that ICE adheres to all applicable laws and statutory requirements serves the public interest.  *Galvez v. Jaddou*, 52 F.4th 821, 832 (9th Cir. 2022) ("[I]t is clear that neither equity nor the public's interest are furthered by allowing violations of federal law to continue.")  Additionally, "the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (internal citation omitted).  In sum, the last two *Winter* factors also weigh in Petitioner's favor.

### IV. CONCLUSION

Accordingly, to prevent further irreparable harm, the Court issues a TEMPORARY RESTRAINING ORDER as set forth below.  IT IS HEREBY ORDERED:

1. Petitioner's Motion for TRO (ECF No. 2) is GRANTED.

2. Respondents are ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with statutory and constitutional protections, including seven-days' notice and a pre-deprivation/custody hearing before a neutral decisionmaker, where (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk.  At any such hearing, Petitioner shall be allowed to have counsel present.

3. Respondents are ORDERED TO SHOW CAUSE why this Court should not enter final judgment on the merits of Petitioner's habeas petition.  Respondents shall file

6

responsive papers within **five court days** from the date of this order. Petitioner may file a reply within **eight court days** from the date of this order. The matter is not set for a hearing, though the Court may set one should it later be determined that a hearing is necessary.

4. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived. Courts regularly waive security in cases like this one. *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011).

IT IS SO ORDERED.

Date: March 17, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE

7